1

```
1                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF TEXAS
2                           FORT WORTH DIVISION

3    UNITED STATES OF AMERICA       .   CRIMINAL ACTION NO.
                                    .   4:09-CR-160-Y
4    V.                             .
                                    .   Fort Worth, Texas
5    JAVIER ROSALES                 .   June 4, 2010
     . . . . . . . . . . . . . . . . . .

6

7

8                       TRANSCRIPT OF PROCEEDINGS
9                          (Sentencing Hearing)
                   BEFORE THE HONORABLE JOHN MCBRYDE
10                   UNITED STATES DISTRICT JUDGE

11

12

13
     APPEARANCES:
14
     For the Government:          MR. JOSHUA T. BURGESS
15                                United States Attorney's Office
                                  801 Cherry Street, Suite 1700
16                                Fort Worth, Texas  76102-6897
                                  (817) 252-5200
17
     For the Defendant:           MR. GENE G. DE BULLET, JR.
18                                Attorney at Law
                                  Wells Fargo Bank Stockyards
19                                2315 N. Main Street, Suite 300
                                  Fort Worth, Texas  76164
20                                (817) 335-4767

21   Court Reporter:              MS. ANA P. WARREN
                                  U.S. District Court Reporter
22                                501 W. 10th Street, Room 201
                                  Fort Worth, Texas  76102-3637
23                                (817) 850-6681

24
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer-aided transcription.
```

2

# *P R O C E E D I N G S*

1

2         (Commencing, 9:05 a.m.)

3             THE COURT:  I'm now calling for sentencing Cause

4    Number 4:10-CR-160-A.  It's the United States of America

5    versus Javier Rosales.  Let's see.  Mr. Burgess is here for

6    the government, and Mr. de Bullet -- is that how you pronounce

7    that?

8             MR. DE BULLET:  de Bullet.  We're here, sir.

9             THE COURT:  -- is here for the defendant.

10        Let's see.  Mr. Rosales appeared before me on December 31,

11   2009, when you pleaded guilty to the offense charged by Count

12   8 of the superseding indictment in this case, and that offense

13   was conspiracy to distribute a controlled substance, and, of

14   course, we're here today for sentencing based on the

15   conviction resulting from that plea.

16        Let's see.  That plea was entered pursuant to a plea

17   agreement that contemplated that the original indictment and

18   the other counts of the superseding indictment as they pertain

19   to this defendant would be dismissed at the time of sentencing

20   if the Court were to approve the plea agreement, and for the

21   information of the defendant and the attorneys, the Court does

22   approve the plea agreement, and the judgment of the Court will

23   be consistent with it.

24        By the way, I failed to mention that Mr. Francisco

25   Hernandez is here as the interpreter, and he's been

3

1    interpreting since we started.

2        You have been sworn in this case, haven't you?

3            THE INTERPRETER:  Yes, Your Honor.

4            THE COURT:  And I wanted the defendant to state his

5    name for the record.

6            DEFENDANT ROSALES:  Javier Rosales-Veloz.

7            THE COURT:  Spell your last name.

8            DEFENDANT ROSALES:  V-E-L-O-Z.

9            THE COURT:  D-E-L-O-Z?

10           DEFENDANT ROSALES:  Yes, Your Honor -- V.

11           THE COURT:  I'm sorry?

12           DEFENDANT ROSALES:  V.

13           THE COURT:  B as in boy?

14           DEFENDANT ROSALES:  As in Victor.

15           MR. DE BULLET:  V as in Victor, Your Honor.

16           THE INTERPRETER:  V as in Victor.

17           THE COURT:  I'm having a hard time.

18       (To the court reporter) Do you get what he's saying?

19       Do you normally go by the surname Rosales?

20           DEFENDANT ROSALES:  Yes.

21           THE COURT:  Mr. de Bullet, did you and your client

22   receive in a timely manner the presentence report and the

23   addenda to it?

24           MR. DE BULLET:  Your Honor, basically, the answer to

25   that is, yes.  We did have a break down in the e-mail.  Our

4

1    machine was not consistent with the government's machine.  We

2    got everything about one day later than it was attempted to be

3    sent.  We would contact the clerk's office and let them know

4    what the problem was.  It was ultimately worked out, but we

5    didn't get them exactly on time, but we got them close to the

6    time.

7         THE COURT:  Were those items read to your client in

8    his language?

9         MR. DE BULLET:  Your Honor, we got out to see him

10   yesterday.  The interpreter was not allowed in.  I let him

11   read those as best he could.  He did read them.

12        THE COURT:  He could read them?

13        MR. DE BULLET:  He could read them piecemeal.

14        THE COURT:  Which ones are you talking about that

15   haven't been read to him in his language?

16        MR. DE BULLET:  Your Honor, they've all been read

17   with him by me as of yesterday.

18        THE COURT:  Do you speak Spanish?

19        MR. DE BULLET:  I do not speak Spanish completely,

20   Judge.  I speak some Spanish.

21        THE COURT:  Well, you weren't able to read them to

22   him in Spanish?

23        MR. DE BULLET:  Not in whole.

24        THE COURT:  And does he require a Spanish interpreter

25   to understand?

5

1          MR. DE BULLET:  Your Honor, my assessment of his

2     Spanish and English is that he speaks approximately 50 to 60

3     percent English and about 50 to 60 percent --

4          THE COURT:  Let me back up then.  Let's take it a

5     step at a time.

6        The presentence report was delivered in mid-March of 2010.

7     Was that read to your client in his language?

8          MR. DE BULLET:  Yes, it was, Your Honor.

9          THE COURT:  And did you discuss that with your client

10    through an interpreter?

11         MR. DE BULLET:  Yes, sir.

12         THE COURT:  Okay.  And then the first addendum was

13    delivered on May 24, and was that read to your client in his

14    language?

15         MR. DE BULLET:  Yes, Your Honor.

16         THE COURT:  And was that discussed between you and

17    your client?

18         MR. DE BULLET:  He actually received that separately,

19    and he and I discussed that yesterday.

20         THE COURT:  In his language?

21         MR. DE BULLET:  Yes, sir.

22         THE COURT:  And then you received a second addendum

23    that was dated June 1, and was that read to your client in his

24    language?

25         MR. DE BULLET:  Your Honor, as best as I could.

6

1          THE COURT:  Okay.  Well, we'll recess long enough for

2     you to read through your interpreter, Mr. Hernandez, to read

3     whatever hasn't been read to your client in his language, and

4     then you discuss whatever hasn't been discussed with your

5     client through the interpreter.  We'll recess and come back to

6     you once you've done that.

7          MR. DE BULLET:  Thank you, Judge.

8       Your Honor, I have in court with me an interpreter that is

9     familiar with Mr. Rosales.  Would it please the Court that I

10    can use my interpreter?

11         THE COURT:  You can use your own interpreter for that

12    purpose if you would like.

13         MR. DE BULLET:  Thank you.

14         THE COURT:  It may be that you will have to go back

15    down -- what do you all suggest, that he be taken back down to

16    the second floor so they can do that?

17         THE MARSHAL:  If possible, Your Honor, yes.

18         THE COURT:  Okay.  Why don't we do that.

19         MR. DE BULLET:  Thank you, Your Honor.

20       Your Honor, I have one paper.  I would like to approach.

21         THE COURT:  You want to do what?

22         MR. DE BULLET:  I want to file one paper with the

23    Court.

24         THE COURT:  Okay.  Hand it to the court coordinator.

25         MR. DE BULLET:  It was inadvertently sent to pretrial

7

1  services, and I'm not sure you ended up with a copy of it

2  several months ago.

3          THE COURT:  Okay.

4          MR. DE BULLET:  Thank you, Your Honor.

5          THE COURT:  The marshal will bring the defendant back

6  when you have had a chance to read those things to him and

7  discuss them with him.

8      (Hearing recesses, 9:15 - 10:40 a.m.)

9          THE COURT:  We'll go back to Number 4:09-CR-160-A.

10     I had some rearraignments that were to start at 10:30.

11  Obviously, we're not going to start on those at 10:30.  I

12  don't know how long this will take.  This might take 15 or 20

13  minutes or maybe even longer.

14     How long do you think it will take, Mr. de Bullet?

15         MR. DE BULLET:  I wouldn't think long, Your Honor.

16         THE COURT:  So the ones that are here for the

17  arraignments, why don't you plan to come back at 11:00.  If

18  you want to leave the courtroom and come back, you're welcome

19  to do that.

20     Mr. -- am I pronouncing your name correctly?  We've been

21  through this before.

22         MR. DE BULLET:  Judge, it's de Bullet.

23         THE COURT:  de Bullet.

24         MR. DE BULLET:  Think Chevrolet, and you've got it.

25         THE COURT:  Okay.  Have you and your client

8

1   reviewed -- have all of the presentence report and all of the

2   addendums now been read to your client in his language?

3           MR. DE BULLET:  Your Honor, yes.  We visited through

4   the screen --

5           THE COURT:  No.  Answer my question --

6           MR. DE BULLET:  Yes.

7           THE COURT:  -- have all of them, either today or

8   earlier, been read to your client in his language?

9           MR. DE BULLET:  Yes, sir.

10          THE COURT:  And have the two of you discussed each of

11  those items in your client's language?

12          MR. DE BULLET:  Yes.

13          THE COURT:  Okay.  Now, there are some objections.

14  You have seen the probation officer's response to the

15  objections, the government's response, and my order expressing

16  my tentative conclusion that the objection is without merit.

17  Do you still wish to pursue all or any of those objections?

18          MR. DE BULLET:  Your Honor, if I could have a little

19  leave of the Court, this is the case where I came in after

20  Mr. Burns and Mr. Shaw had been allowed to leave this case.  I

21  think you allowed Mr. Burns to withdraw first, but then

22  subsequent to that, Mr. Shaw withdraws.  I've played

23  considerable catch-up since then because I did not have the

24  discovery until just a few weeks ago from Mr. Burgess.

25      Those objections were my words and were based, in part, on

9

1    the discovery that had been made available to me, including

2    the ATF records, the debriefing notes, some of which I did not

3    have previously.  At this point in time, after discussing

4    those particular objections with my client, the changes are so

5    minute that he has elected to withdraw them.

6            THE COURT:  All objections?

7            MR. DE BULLET:  Yes, and with just a couple of

8    clarifications.  Again --

9            THE COURT:  What clarifications are you talking

10   about?

11           MR. DE BULLET:  Well, the clarifications are -- and

12   if I may make them generally, because otherwise, we'll get

13   back into about 20 of these.

14       He, meaning, Mr. Rosales, purchased one gun in his

15   lifetime, and that was a handgun.  The guns that are alleged

16   to have been the combat weapons that were going to be exported

17   into Mexico, he did not acquire or purchase those.  We now

18   have ATF forms where they were purchased by other people.  So

19   I wanted the Court to understand --

20           THE COURT:  Well, there is no issue -- there is no

21   question that the other guns are relevant conduct or need to

22   be taken into account.  I take it he acknowledges that?

23           MR. DE BULLET:  He does, Your Honor.  He does.

24           THE COURT:  Okay.  Go ahead.

25           MR. DE BULLET:  Secondly, as to where those guns --

1    who bought those guns, where those guns were stored, and how

2    those guns were disseminated to Mr. Rosales was a matter of a

3    CI that works for the government and is involved with other

4    co-defendants in this, some of which were not even known,

5    introduced to my client until he was in jail or in court to

6    begin with with Mr. Shaw.

7        Again, where the rub is in this case, Judge, just to get

8    straight to the point and not bore you with this, is that this

9    matter of whether he was an active leader or manager or

10   something like this, in this conspiracy, he maintains in his

11   opinion he wasn't because he was doing what he was told to do

12   by some other folks and doing them, active participant.  Other

13   people might form easily another opinion because we don't

14   really know how many tiers there are, at least we don't.  The

15   government I'm sure is privy to that.

16       He wrote a letter and I signed it, and, basically, what he

17   said is that he was aware of what was going on.  He helped

18   them move these guns.  He's to blame for the relevant conduct

19   and owns up to the relevant conduct, and those are the only

20   changes that he wanted to make.  He wanted to make sure that

21   the Court understood what he had not done versus what he had

22   done, and then, obviously, it's the Court's decision as to

23   where he's stands in the managerial steps of this thing or

24   ladder of this thing.  But he does withdraw those --

25           THE COURT:  All of his objections he withdraws?

11

1        MR. DE BULLET:  Yes, and does admit to the relevant

2   conduct, and, of course, to the -- I believe it's Paragraph 8,

3   which was mentioned by the Court earlier, which was part of

4   the plea agreement.

5        THE COURT:  I suppose what's really happening now is

6   that you're accepting responsibility for the objections that

7   might cause him to lose acceptance of responsibility?

8        MR. DE BULLET:  Yes, sir.

9        THE COURT:  Is that what's happening?

10       MR. DE BULLET:  Yes, sir.

11       THE COURT:  Well, normally, I consider a defendant to

12  be -- that the lawyers acting on behalf of the defendant when

13  a lawyer does something, if a lawyer does things that would

14  indicate the defendant is not accepting responsibility, I

15  generally assume that that's what the defendants agree to.

16     Did the defendant know you were making those objections?

17       MR. DE BULLET:  Your Honor, the defendant was not

18  privy to the discovery that we got late in this case.  We had

19  problems getting in and out of --

20       THE COURT:  Did the defendant know you were making

21  those objections?

22       MR. DE BULLET:  Well, he knew I was making those

23  objections.  He didn't know quite what they were.

24       THE COURT:  Okay.  The fact that he didn't know that

25  the Court had information that would show that the objections

U.S. DISTRICT COURT

12

1    were totally without merit, without justification to make,

2    because he knows what the facts are?

3            MR. DE BULLET:  I won't argue that, Judge.

4            THE COURT:  Pardon?

5            MR. DE BULLET:  I won't argue that with you, no, not

6    at all.

7            THE COURT:  Well, I'm going to give him the benefit

8    of the doubt on that.  I've got some misgivings about it.  It

9    causes me some concern that we have objections that show the

10   defendant is not accepting responsibility, and then we have

11   the hearing, the sentencing hearing, well, then he gets up and

12   says, I didn't know anything about it.  I hear that too often.

13           MR. DE BULLET:  I apologize, Your Honor.

14           THE COURT:  I'll assume that he has accepted

15   responsibility.

16           MR. DE BULLET:  May I proceed, Your Honor?

17           THE COURT:  Hold on just a minute.

18       There being no further objections to the presentence

19   report -- there are no objections at this time to the

20   presentence report, the Court adopts as the fact findings of

21   the Court the facts set forth in the presentence report as

22   modified or supplemented by the objections, such as they

23   pertain -- the facts pertain to acceptance of responsibility,

24   also, as modified or supplemented by any facts I've found from

25   the bench, and one is that I'm going to grant acceptance of

13

1    responsibility.

2         MR. DE BULLET:  Thank you, Your Honor.

3         THE COURT:  The Court adopts as the conclusions of

4    the Court the conclusions expressed in the presentence report

5    as modified or supplemented by the addenda and any conclusions

6    I've expressed from the bench, which, of course, I concluded

7    that he should receive a reduction for acceptance of

8    responsibility.  And in just a minute, I believe I can tell

9    you what they are.

10        MR. DE BULLET:  I want to make sure I heard you.

11   I've got one ear right here and one ear on you.

12        THE COURT:  Okay.  Well, you just relax both ears

13   because it's going to be a few seconds before I say anything

14   else.

15     (Brief pause in proceedings)

16        THE COURT:  Okay.  The Court concludes that the Total

17   Offense Level is 41.  That the Criminal History Category is 1.

18   That the imprisonment range is 324 to 405 months.  That the

19   supervised release range is four to five years, and that the

20   fine range is $25,000 to $2 million, and that a special

21   assessment of $100 is mandatory.

22     Okay.  At this time you can make whatever statement you

23   would like to make on behalf of your client.

24        MR. DE BULLET:  Thank you, Your Honor.

25     The man in front of the Court is well known to the Court

14

1    as to the other defendants as well.

2        I want to tell you a little bit about Javier, which is

3    what I have learned from the family and what I have learned

4    from the presentence report, what I have learned from him.  He

5    came out of --

6            THE COURT:  Let me mention before you go forward.

7    I've read all of these letters -- I guess you provided them to

8    us?

9            MR. DE BULLET:  Yes, sir.

10           THE COURT:  That were supporting him, and he has

11   tremendous support.  I'm impressed with the support he has.

12       Go ahead and make whatever statement you want to make.

13           MR. DE BULLET:  Your Honor, and I'll make this as

14   brief as I can.  He came out of Old Mexico with a dad who was

15   a wood worker.  They came to the United States a long, long

16   time ago.  He became a wood worker, took over his dad's

17   practice as a wood worker and became, basically, a furniture

18   manufacturer here in Fort Worth.

19       He and his wife had a child, a little boy, that's six,

20   seven, or eight years old right now and doing very well in

21   school.  His whole family is back there, and I'll introduce

22   them in just a moment.

23       He went to Arlington Heights High School.  He went through

24   all of the details to become a citizen, a nationalized

25   citizen.  He is now been a citizen of the United States and

15

1  has been for several years.  He's a family man.  He doesn't do

2  dope, which was kind of interesting to me.  They're buying

3  their own home.  He has no criminal record, zero, before this.

4  He's married one time to the same wife that he met in high

5  school.

6      He actually files tax returns, which is unusual in my

7  practice, and had one with his wife a couple years ago before

8  this happened out of the furniture business for $140,000.  So

9  this man has been a provider, someone who has been in the

10 community as a worker, and up until this situation, he's done

11 very well.

12     I've got 14 folks out here that I'm just going to briefly

13 -- wife, can you stand up, please?

14     And, father-in-law, and sister-in-law.  And mother and

15 aunt, stand up together, please.  Mom and dad.

16     Your Honor, brothers, cousins, aunts.  As you can see, we

17 have 13 or 14 folks here --

18         THE COURT:  You all can be seated.  Thank you for

19 being here.

20         MR. DE BULLET:  Obviously, we would love to have a

21 second chance, a second bite at this apple, as soon as we

22 could.  I have my own personal opinions that I won't share

23 with the Court as to what really happened in this case.  I

24 hope the Court will take into consideration the positiveness

25 of his lifetime before he got involved with these folks.  He,

16

1    clearly, did some wrong things and has owned up to those wrong

2    things.

3        I would like to tender to the Court my client for whatever

4    statement he would like to make.

5            THE COURT:  Okay.  Mr. Rosales, you have the right to

6    make any statement or presentation you would like to make on

7    the subject of mitigation, and that is the things you think

8    the Court should take into account to determine what sentence

9    to impose or on the subject of sentencing more generally, and

10   at this time, I'll invite you to do that.

11           DEFENDANT ROSALES:  First, Your Honor, I'm asking for

12   forgiveness from the government of the United States, this

13   Court, and my family, because this family -- I did some things

14   that I shouldn't have done, which I know that I have -- that I

15   am going to be punished.  I've never had in my past any kind

16   of problem.  This is my first time.  I have always worked hard

17   since 14 years old.  I'm embarrassed myself that at my age to

18   commit these kinds of mistakes.

19       I have worked hard to have my own house, my own business,

20   and due to my mistake, I almost lost everything, even my

21   business.

22       I never asked for any help from the government of the

23   United States.  I've always been working hard, and I want to

24   ask for the opportunity to come back soon with my family, and,

25   again, reconstruct my life.

17

1    I ask for the forgiveness for all the community and
2    everybody for myself -- I ask you to give me a chance to
3    reveal in my life, and I promise you that I'm never going to
4    make these kinds of mistakes.  God bless you.

5        THE COURT:  Okay.  Well, apparently, you have been
6    productive during your life.  Unfortunately, you got involved
7    in something that was a very serious offense that requires a
8    severe penalty.

9    I'm going to sentence you at the very bottom of the
10   advisory guideline range.  I'm going to give you the benefit
11   of the lowest sentence that the advisory guideline range
12   provides for.  The reason I'm sentencing at that level is
13   because I think it's a reasonable sentence that properly and
14   adequately addresses all of the factors the Court should
15   consider under 18, United States Code, Section 3553(a), and
16   the sentence that I plan to impose is a sentence of
17   imprisonment of 324 months, plus, a term of supervised release
18   of five years that would start when you get out of prison,
19   plus, payment of a special assessment of $100.  Like I said, I
20   think that is a reasonable sentence that adequately and
21   appropriately addresses all of the factors the Court should
22   consider under the sentencing statute of 18, United States
23   Code, Section 3553(a).

24   So the Court orders and adjudges that the defendant be
25   committed to the custody of the Bureau of Prisons to serve a

18

1    term of imprisonment of 324 months.  I'm also ordering -- I'm

2    not ordering the defendant to pay a fine because I don't have

3    any reason to think he can or will be able to in the future.

4        I am ordering that he serve a term of supervised release

5    of three years.  That will start when he gets out of prison.

6    Now, the conditions of that supervised release -- I'm sorry.

7    I misspoke.  The term of supervised release will be five

8    years, not three years.  And the conditions of that supervised

9    release will be the standard conditions that will be set forth

10   in the judgment and conviction of sentence and the following

11   additional conditions:

12       The defendant shall not commit another federal, state, or

13   local crime.  The defendant shall not possess illegal

14   controlled substances.  The defendant shall cooperate in the

15   collection of DNA as directed by the probation officer, and

16   the defendant shall refrain from any unlawful use of a

17   controlled substance and shall submit to one drug test within

18   15 days of release from imprisonment and at least two periodic

19   drug tests thereafter as directed by the probation officer.

20       The Court further orders that the defendant pay a special

21   assessment of $100.  That's payable immediately to the United

22   States of America through the office of the United States

23   Clerk.

24       Mr. Rosales -- let's see.  Does the government have a

25   motion to make?

1        MR. BURGESS:  Yes, Your Honor.  I move to dismiss all

2   the remaining counts in the indictment and the superseding

3   indictment as they apply to this defendant.

4        THE COURT:  Okay.  I'll grant that motion.  I dismiss

5   the original indictment and the counts in the superseding

6   indictment named as to this defendant, but that dismissal is

7   only as to this defendant.  There are so many other

8   defendants.

9     Mr. Rosales, you have the right to appeal from the

10  sentence I've imposed if you're dissatisfied with it.  That

11  appeal would be to the United States Court of Appeals for the

12  Fifth Circuit.  You have the right to appeal in forma pauperis

13  if you qualify for it.  That's something you will have to make

14  a special request for.  You have the right to have the clerk

15  of the Court file a notice of appeal for you, and the clerk

16  will do that forthwith if you were to specifically request

17  it.

18     You and your attorney have been given a form that outlines

19  certain rights and obligations with reference to an appeal.

20  If you haven't already done so, I want the two of you to

21  review it in your language if necessary for you to fully

22  understand it, and once both of you are satisfied that you

23  fully understand it, I want both of you to sign it and return

24  it to the court coordinator.

25     Has that been done?

20

1          MR. DE BULLET:  It has, Your Honor.

2          THE COURT:  Okay.  The defendant is remanded to

3   custody -- what is it?

4          MR. BURGESS:  Your Honor, there was also a forfeiture

5   allegation.  I would ask that that also be dismissed as it

6   relates to this defendant.

7          THE COURT:  Okay.  That will be dismissed as well.

8   The defendant is remanded to custody --

9          MR. DE BULLET:  We approve that, Your Honor.  We

10  approve the forfeiture.

11         THE COURT:  Well, he said he wants to dismiss the

12  forfeiture?

13         MR. DE BULLET:  You want to dismiss it?

14         MR. BURGESS:  There are no assets for this defendant.

15         THE COURT:  I granted that motion.

16         MR. DE BULLET:  We have no problem with that, Your

17  Honor.  Thank you very much.  Have a nice weekend.

18         THE COURT:  Defendant is remanded to custody, and the

19  attorneys are excused.

20      Okay.  We're going to take a 15 minute recess.  We've been

21  at this a little over two hours, and then we'll pick up with

22  the rearraignments.

23      (End of proceedings, 11:00 a.m.)

24

25                          -oOo-

U.S. DISTRICT COURT

21

1

<u>CERTIFICATE</u>

2         I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter, and
3    that the transcript was prepared by me and under my
supervision.

4

s/  Ana P. Warren                          August 24, 2010
5    Ana P. Warren, CSR #2302                     Date
U.S. District Court Reporter

6

7                          -oOo-

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25