```
 1              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
 2                   FORT WORTH DIVISION

 3   UNITED STATES OF AMERICA      (  4:09-CR-160-A
                                   (
 4   VERSUS                        (   DALLAS, TEXAS
                                   (
 5   JAVIER ROSALES                (   DECEMBER 23, 2009

 6            TRANSCRIPT OF REARRAIGNMENT 2 OF 2
             BEFORE THE HONORABLE JOHN MCBRYDE
 7               UNITED STATES DISTRICT JUDGE

 8

 9   A P P E A R A N C E S:

10

11   FOR THE GOVERNMENT:       JOSHUA T. BURGESS
                               Assistant United States Attorney
12                             801 Cherry Street
                               Burnett Plaza Suite 1700 Unit 4
13                             Fort Worth, Texas 76102
                                   817.252.5200
14

15   FOR THE DEFENDANT:        JAMES HOWARD SHAW
                               James H. Shaw PC
16                             912 Belnap Street
                               Fort Worth, Texas  76102
17                                 817.877.0401

18                             GENE G. DE BULLET, JR.
                               Law Office of Gene G. de Bullet, Jr.
19                             Wells Fargo Bank Stockyards
                               2315 North Main Street, Suite 300
20                             Fort Worth, Texas  76164
                                   817.335.4767
21

22   INTERPRETER:              FRANCISCO HERNANDEZ

23
     COURT REPORTER:           RANDY M. WILSON, C.S.R.
24                             1100 Commerce Street, Room 1625
                               Dallas, Texas 75242
25                                 214.766.9150
```

```
 1              (Proceedings begin at 10:58 a.m.)
 2          THE COURT:  Okay.  I'm calling for rearraignment --
 3     I'll start with Number 4:09-CR-160-A, there are two
 4     defendants in that case.  It's United States of America
 5     versus the first defendant is Javier Rosales.
 6          Let's see, Mr. Burgess is here for the government.
 7          And where is Mr. Rosales?
 8              MR. SHAW:  Your Honor, I remain here.
 9              THE COURT:  Why don't you come up and deal with it
10     up here.
11              MR. DE BULLET:  Good morning, Your Honor.
12              THE COURT:  Good morning.
13              MR. DE BULLET:  May I approach?
14              THE COURT:  Yes.
15              MR. DE BULLET:  Your Honor, if it please the court?
16          I'm Gene de Bullet.  I've been recently retained in this
17     case.  Jim Shaw has remained on this case.  And we're here
18     with the client Mr. Rosales.
19              THE COURT:  Okay.  Now, I had -- Mr. Rosales, raise
20     your right hand to be sworn.
21          We still have the issue of an interpreter.  Apparently
22     he really doesn't need one but he wants one.
23              MR. SHAW:  Well, he really might need one with some
24     of the issues.
25              THE COURT:  Mr. Hernandez is here to serve that
```

```
 1    purpose in case he does.  So we're going through an
 2    interpreter.
 3                   (Defendant Rosales is sworn.)
 4            THE COURT:  Before I go any further, let me ask him
 5    a few questions.
 6        Mr. Rosales, do you understand that you're now under
 7    oath and that if you answer any of my questions falsely your
 8    answers could later be used against you in a prosecution for
 9    perjury or making a false statement?
10            DEFENDANT ROSALES:  Yes.
11            THE COURT:  What is your full name?
12            DEFENDANT ROSALES:  Javier Rosales-Beloz.
13            THE COURT:  What was the last part?
14            THE INTERPRETER:  Beloz.
15            THE COURT:  Okay.  And tell me how well you read,
16    write, understand, and speak the English language.
17            DEFENDANT ROSALES:  50 to 60 percent.
18            THE COURT:  Okay.  Now, before we go to the other
19    defendant, let me find out where we are on the attorney
20    situation.
21        Mr. Shaw has filed a motion to withdraw, and he says
22    that Mr. Rosales won't talk to him so he hasn't been able to
23    get Mr. Rosales to consent to his withdrawal.
24        Mr. Rosales, are you aware that Mr. Shaw has filed a
25    motion to withdraw as your attorney so he won't be your
```

1    lawyer anymore?

2              DEFENDANT ROSALES:  Yes.

3              THE COURT:  Is it your wish that he withdraw as

4    your attorney so he won't be your lawyer anymore?

5              THE INTERPRETER:  I ask you to repeat your

6    question, Your Honor.

7              THE COURT:  Do you want Mr. Shaw to withdraw?  Do

8    you want me to order that he can withdraw so he won't be your

9    lawyer anymore?

10             DEFENDANT ROSALES:  Well, we were talking with both

11   of them, and I don't know if he was going to continue as my

12   attorney or what.  I don't understand.

13             THE COURT:  Well, let me explain again to you.

14      He's filed a motion to withdraw as your attorney.  Do

15   you object to him withdrawing from being your attorney?

16             DEFENDANT ROSALES:  Well, what I want is I have

17   another attorney now.

18             THE COURT:  How do you pronounce your last name?

19             MR. DE BULLET:  DEB-U-LAY.

20             THE COURT:  Is that a new pronunciation you

21   developed, or have you always --

22             MR. DE BULLET:  It's always been the same.

23             THE COURT:  Okay.  Well, I've called you something

24   else.

25             MR. DE BULLET:  I've been called a lot of things.

```
 1                        (Laughter.)
 2            THE COURT:  Okay.  But I'll try to remember that.
 3            MR. DE BULLET:  Thank you, sir.
 4            THE COURT:  Do you want Mr. de Bullet - did I get
 5    it close that time - to be your lawyer?
 6            DEFENDANT ROSALES:  Yes.
 7            THE COURT:  And you want him to be your lawyer
 8    instead of Mr. Shaw?
 9            DEFENDANT ROSALES:  Yes.
10            THE COURT:  Mr. de Bullet, do you see any reason I
11    shouldn't let Mr. Shaw withdraw?
12            MR. DE BULLET:  Your Honor, only to say to the
13    court that Mr. Shaw and I have cooperated since I came onto
14    this.  We talked, again, together with the defendant this
15    morning at length.  I found the work that he's done to be
16    very, very helpful to me.  I've been in this case three days
17    now.  Personally, I would like Mr. Shaw to stay on because I
18    think that he would be of great help to me.
19            THE COURT:  Well, it sounds to me like Mr. Shaw is
20    saying that your client, Mr. Rosales, is abusive toward him.
21        Is that a correct statement?
22            MR. SHAW:  I don't think I used that term.
23            THE COURT:  I don't -- you didn't.  But you say he
24    won't talk to you and he's unpleasant to you?
25            MR. SHAW:  He doesn't want to speak to me.  He just
```

1   told me he doesn't want to speak to me.  His interpreter has

2   told me he doesn't want to speak to me.

3        I think if the plea proceeds today and the plea is

4   completed that I will have got him to the point that, number

5   one, I've been capable and compensated for it, and he has, in

6   fact, hired somebody else.  And he has previously filed, or

7   Mr. Rosales has previously filed, written letters with you

8   asking that I be "fired," I believe is the word he used.

9            THE COURT:  What is it, Mr. de Bullet, that you

10  think you would gain by having Mr. Shaw continue on as one of

11  the attorneys for Mr. Rosales?

12           MR. DE BULLET:  Your Honor, I already gained the

13  extent of his file, which is about like that (indicating.)  I

14  also visited with Danny Burns, who I understand the court

15  appointed in this case.  It's a fairly complex case for

16  somebody to absorb in a couple three days, and the assistance

17  that I've received from Mr. Shaw has been invaluable.

18           THE COURT:  Well, have you received all you need

19  from him in order to lead up to your client pleading guilty?

20           MR. DE BULLET:  I received all that I could from

21  him thus far.

22           THE COURT:  Well, I'm not sure why your client is

23  pleading guilty then if you don't know enough to advise him

24  on that subject.

25           MR. SHAW:  Judge, if it please the court?

1    I brought Mr. de Bullet - I call him a lot of things,

2  too - to the point where we recommended that he enter his

3  plea.

4    I have no objection to letting me withdraw after the

5  plea, but let Mr. de Bullet finish the sentencing.  I'm not

6  going to drop him in the grease if he wants to call and talk

7  to me about it, but I don't need to be in the day-to-day

8  gristmill dealing with this.

9    THE COURT:  Well, I'm going to leave you in the

10  case for time being.

11    MR. SHAW:  Thank you, Your Honor.

12    THE COURT:  So you and Mr. de Bullet are both the

13  defendant's attorneys for the time being.

14    You understand that, Mr. de Bullet, that I discharged --

15  oh, what's his name, Danny Burns from any further --

16    MR. SHAW:  I did not at this point, judge.

17    THE COURT:  And Mr. Shaw is going to reimburse the

18  government for whatever it costs us to have Mr. Burns in for

19  the period that we had him here.

20    MR. SHAW:  Would this be a good time to bring that

21  up again?

22    THE COURT:  Well, if you want to bring it up now.

23    MR. SHAW:  Well, we had a hearing the other day, if

24  it please the court, and you had suggested that you might

25  have erred in appointing Danny Burns to assist me because of

1    the same conduct occurred with Danny and the client.  And I

2    just didn't want, you know, feel compelled to or set to by

3    order to reimburse him.

4           THE COURT:  No, you're going to be compelled by an

5    order.

6           MR. SHAW:  I'll wait, Your Honor.  Thank you, Your

7    Honor.  I just thought I would bring it up.

8           THE COURT:  I think I've already indicated you're

9    going to, and I don't want to back off and do something

10   different from what I said I was going to do.

11          MR. SHAW:  Well, I was just thinking since you said

12   you might have erred in appointing him.

13          THE COURT:  I meant in the since that Mr. Rosales

14   apparently is not complaining of you really as an attorney,

15   he's just got something else in mind he wants.

16          MR. SHAW:  I feel better about talking about it,

17   Your Honor.  Thank you.

18          THE COURT:  Okay.  And so he had the same problem

19   with Mr. Burns he had with you?  He wasn't getting whatever

20   it was he wanted?

21          MR. SHAW:  Yes, Your Honor.  That's all I have on

22   that issue.

23          THE COURT:  Okay.  Why don't y'all all stand back a

24   minute and I'll come back to you in a little bit.

25          MR. DE BULLET:  May I say one more thing?

1          THE COURT:  Yes.

2          MR. DE BULLET:  My client and I, we talked this

3    morning, all three of us again at length, and when I

4    debriefed with this gentleman over in the Parker County Jail,

5    what I developed is that it wasn't Mr. Shaw.  It was

6    Mr. Shaw's associate, some people on his staff, et cetera,

7    that there was a communication problem.  My client indicates

8    probably a failure to explain some things.

9          And as a result of that, personality conflicts occurred

10   between those people and Mr. Rosales that kind of put him in

11   a stupor.  And I think that's what held this up.  And I just

12   wanted to indicate to you that he wanted to apologize.

13         THE COURT:  Okay.  I want to be sure before this is

14   all over - and we'll get into it when we have Mr. Rosales

15   back for me to deal with him on the questions I normally ask

16   in determining whether a plea of guilty is voluntary, I want

17   to be sure he's doing this voluntary - that he's not pleading

18   guilty because some lawyer talked him into doing it.

19         MR. DE BULLET:  Yes, Your Honor.

20         THE COURT:  And I want to be sure that he

21   understands everything that's going on and he, in fact,

22   acknowledges, truthfully acknowledges, the -- the existence

23   of all of the facts that cause him to be guilty of the

24   offense to which he proposes to plead guilty.

25         So I hope those things -- you've already gone over those

1    things with him so he understands what I will expect before

2    I'll accept a plea of guilty.

3        Have you gone over that?

4            MR. DE BULLET:  I have, judge.

5            THE COURT:  Okay.  Y'all step back just a minute

6    and let me call the other defendant in this case forward.

7        It's the same case, 4:09-CR-160-A.  The defendant this

8    time is Gustavo Pulido.

9        And Mr. Westfall is here with Mr. Pulido.

10       Mr. Pulido, raise your right hand -- does he need an

11   interpreter as well?

12           MR. WESTFALL:  He does, Your Honor.

13           THE COURT:  Okay.  And have you been sworn --

14   you've been sworn in this case, Mr. Hernandez?

15           THE INTERPRETER:  Yes, Your Honor.

16           THE COURT:  So, Mr. Pulido, raise your right hand

17   to be sworn.

18               (Defendant Pulido is sworn.)

19           THE COURT:  Okay.  Do you understand, Mr. Pulido,

20   that you're now under oath and if you answer any of my

21   questions falsely your answers could later be used against

22   you for a prosecution for perjury or making a false

23   statement?

24           DEFENDANT PULIDO:  Yes.

25           THE COURT:  How well do you read, write,

1  understand, and speak the English language?

2          DEFENDANT PULIDO:  Very little.  I understand very

3  little.

4          THE COURT:  Okay.  What is your full name?

5          DEFENDANT PULIDO:  Gustavo Pulido Dominges.

6          THE COURT:  Spell your last name.

7          DEFENDANT PULIDO:  D-O-M-I-N-G-E-S.

8          THE COURT:  Okay.  Y'all step back just a minute.

9      Mr. Rosales, go back behind where they are.  And I'll

10  have Mr. Rosales' (sic) attorneys come stand with him.

11      Show Mr. Rosales where to go, one of the -- yeah, back

12  there.

13      The interpreter needs to be close to both of them.  He's

14  the interpreter for both of them at the same time.

15      Okay.  Now, let me call in the other case I have set for

16  rearraignment, Number 4:09-CR-152-A.  It's United States of

17  America versus Stacy Onken.

18      And Mr. Lewis is here for the government.

19      And Mr. Curtis is here for the defendant.

20      Mr. Onken, raise your right hand to be sworn.

21              (Defendant Onken is sworn.)

22          THE COURT:  Mr. Onken, do you understand that

23  you're now under oath and that if you answer any of my

24  questions falsely your answers could later be used against

25  you in a prosecution for perjury or making a false statement?

```
 1              DEFENDANT ONKEN:  Yes, sir.
 2              THE COURT:  And I take it you read, write, and
 3    understand the English language proficiently?
 4              DEFENDANT ONKEN:  Yeah.
 5              MR. CURTIS:  Marginally, Your Honor.
 6              DEFENDANT ONKEN:  Marginally.
 7              MR. CURTIS:  I read most everything to him.
 8              THE COURT:  Okay.  Because of a -- what's the
 9    problem?
10              MR. CURTIS:  He has an IQ of between 64 and 74,
11    Your Honor.
12              THE COURT:  Are you satisfied that he does
13    understand what's going on?
14              MR. CURTIS:  Yes, sir.  I've had him -- and I also
15    had him examined by Dr. Compton and have a report from her
16    that -- a finding that he is competent and understands the
17    proceedings and what we're doing.
18              THE COURT:  Okay.
19         What is your full name?
20              DEFENDANT ONKEN:  Stacy Allen Onken.
21              THE COURT:  How do you spell the "Allen"?
22              DEFENDANT ONKEN:  A-L-L-E-N.
23              THE COURT:  Oh, Allen, I'm sorry.  I misunderstood
24    you.
25         I have now in front of me Mr. Rosales, Mr. Pulido, and
```

Mr. Onken.  And I'm going to give all of you some explanations, some that are very important bearing in mind your intent to plead guilty.  So listen closely to these explanations.

You and each of you may, if you choose, plead not guilty to any offense charged against you, or persist in that plea if it already has been made.

If you plead not guilty, the Constitution of the United States guarantees to you the following rights:

The right to a speedy and public trial by a jury in this District.

The right at such a trial for you to confront, that is, to see, hear, and cross-examine, all witnesses against you.

The right to use the power and process of the court to compel the production of any evidence, including the attendance of any witnesses in your favor.

The right to have the assistance of an attorney in your defense at all stages of the proceedings.  If necessary, an attorney will be appointed to represent a defendant who does not have an attorney.

You cannot be compelled to testify.  The decision of whether or not you will testify is a matter in which your judgment will control.

The United States government must prove your guilt beyond a reasonable doubt.

1    If you're found guilty you have the right to appeal your

2  conviction.

3    Defendant Rosales, have you understood the explanations

4  that I've given you about your constitutional rights?

5        DEFENDANT ROSALES:  Yes.

6        THE COURT:  Defendant Pulido, have you understood

7  the explanations I've given you about your constitutional

8  rights?

9        DEFENDANT PULIDO:  Yes, sir.

10        THE COURT:  Defendant Onken, have you understood

11  the explanations I've given you about your constitutional

12  rights?

13        DEFENDANT ONKEN:  Yes, sir.

14        THE COURT:  Okay.  I'm going to give all of you

15  some further explanations.  They're important as well bearing

16  in mind your intent to plead guilty, so listen closely.

17    If you plead guilty and if such a plea is accepted by

18  the court, there will not be a further trial of any kind.  So

19  by pleading guilty you waive the right to a trial as well as

20  those other rights associated with a trial, as I have

21  described them.

22    Generally, a defendant who is accused of a crime cannot

23  plead guilty unless he's actually guilty of that crime.

24    In federal court, the judge determines the penalty if a

25  defendant is convicted whether it was on a verdict of a jury

or upon a plea of guilty.

Other than the staff of the court, the court has not and will not talk to anyone about the facts of your case except here in your presence where you, your attorney, and representatives of the government are all present.

If you should be convicted, you and your lawyer each will be given an opportunity to present to the court any pleas for leniency.

The penalty will be decided on the basis of the facts set forth in the presentence report and facts heard here.

You should never depend or rely upon any statement or promise by anyone, whether connected with a law enforcement agency or the government or anyone else as to what penalty will be assessed against you.

Should you decide to plead guilty, your plea of guilty must not be induced or prompted by any promises, mental pressure, threats, force, coercion, or pressure of any kind. A plea of guilty must be purely voluntary and you should plead guilty only because you're guilty and for no other reason.

Now, one or more of you may be planning to plead guilty pursuant to a plea agreement. If that's the case, I'll probably ask some questions about that plea agreement and might order the plea agreement filed. However, I probably will not be in a position today to determine whether I accept

1    or reject the plea agreement.  --

2        And if I don't reject it today, I'll carry it along to

3    the future once I receive more information, a decision, of

4    whether I'll accept it.

5        If later on I reject the plea agreement, then I'll

6    notify the affected defendant and the attorneys in that case

7    that I've done so and will give that defendant an opportunity

8    to withdraw his plea of guilty.

9        If I reject the plea agreement, of course, neither the

10   defendant nor the government will have any rights or

11   obligations under that plea agreement.

12       Now, the offense to which you propose to plead guilty is

13   a felony.  An adjudication of guilt of such an offense may

14   deprive a defendant of valuable rights, such as the right to

15   vote, to hold public office, to serve on a jury, to possess

16   any kind of firearms, and other rights.

17       An adjudication of guilt could result in deportation,

18   that is, being required to leave the United States of a

19   defendant who is an alien and can adversely affect such a

20   defendant's ability to ever become a citizen of the United

21   States.

22       Defendant Rosales, have you understood the explanations

23   -- additional explanations I've given you?

24               DEFENDANT ROSALES:  Yes.

25               THE COURT:  Defendant Pulido, have you understood

1    the additional explanations I've given you?

2              DEFENDANT PULIDO:  Yes, sir.

3              THE COURT:  Defendant Onken, have you understood

4    the additional explanations I've given you?

5              DEFENDANT ONKEN:  Yes, sir.

6              THE COURT:  Okay.  I'm going to give all of you

7    some explanations now about the sentencing process.  These

8    explanations are very important bearing in mind your intent

9    to plead guilty, so listen closely.

10        Under the Sentencing Reform Act of 1984, the United

11   States Sentencing Commission has issued guidelines for judges

12   to follow in determining the sentence in a criminal case.

13        Now, before I go any further on these explanations let

14   me ask each of you a question:

15        Mr. Rosales, have you discussed with your attorneys how

16   the sentencing guidelines might affect your case?

17             DEFENDANT ROSALES:  Yes.

18             THE COURT:  Defendant Pulido, have you discussed

19   with your attorney how the sentencing guidelines might affect

20   your case?

21             DEFENDANT PULIDO:  Yes, sir.

22             THE COURT:  Defendant Onken, have you discussed

23   with your attorney how the sentencing guidelines might affect

24   your case?

25             DEFENDANT ONKEN:  Yes, sir.

1          THE COURT:  Okay.  Going on now with the

2    explanations concerning the sentencing process.

3          The court is required to consider any applicable

4    sentencing guideline but may depart from the guidelines under

5    some circumstances.  The guidelines have been determined to

6    be advisory only but the court is obligated to consider them

7    in determining what sentence is a reasonable sentence to be

8    imposed.

9          The court is not bound by facts that are stipulated

10   between the defendant on the one hand and the government on

11   the other.

12         The court can impose punishment that might disregard

13   stipulated facts or take in account facts not mentioned in

14   the stipulated facts.  If that were to occur you might not be

15   permitted to withdraw your plea of guilty.

16         The court will not be able to determine the guideline

17   sentence for your case until after the presentence report has

18   been completed and you and the government have had an

19   opportunity to challenge the facts and conclusions reported

20   by the probation officer.

21         After the court has determined what guidelines apply to

22   a case, the court has the authority in some circumstances to

23   impose a sentence that is more severe or less severe than the

24   sentence called for by the guidelines.  Under some

25   circumstance the defendant or the government may have the

right to appeal any sentence the court has imposed.

Parole has been abolished.  And if you're sentenced to prison you will not be released on parole.

Now, as soon as this hearing is over this morning as to each of you, your attorney will go to the probation office on the fourth floor with a form that's been provided and set up a time when the probation officer who will be assigned to your case can interview you.  You can be present when that interview occurs if appropriate arrangements are made.

And I might add that the degree of your cooperation with the probation officer can be a factor in the severity of your sentence.  That's something you'll want to discuss with your attorney.

The purpose of that interview is so the probation officer can obtain from you information you have relevant to the sentencing process.

In addition to obtaining information from you on that subject, the probation officer will obtain information from the other persons, such as the prosecutor, the investigating agency, maybe your family members, perhaps your employer or former employers, and maybe other sources.

Once the probation officer has enough information to form opinions as to which of the sentencing guidelines apply to your case and what sentencing range is applicable in your case, the probation officer will put those opinions in a

written document called the presentence report.  And in that
document the probation officer will also recite the facts
that those opinions are based on.  You'll get a copy of that
report when its completed.  The attorneys will get copies,
the attorneys in your case will get copies of your report.
And I'll get the original.

I rely on those reports very heavily in determining what
sentence to impose so they need to be as complete and
accurate as possible.

When you receive yours, if you read English, read it
over very carefully.  If you don't, and in the case of
Mr. Onken I want to be sure that Mr. Curtis reads him to him,
either read the report, if you can read it.  If you can't,
have your attorney read it to you so you can understand it.
And if it has to be through an interpreter do it that way.
And if there's anything in that report that you think is
inaccurate or you think something's been left out that ought
to be in that report tell your lawyer.  And then he can
object to it.  And I'll rule on those objections at or before
the sentencing hearing.

And, of course, you and your attorney will be permitted
to speak on your behalf at the sentencing hearing.

Now, the sentencing hearing in the case of Mr. Onken
will be on April 23, 2010, at 9:00 o'clock a.m.

As to Defendant Rosales and Defendant Pulido, your

1    sentencing hearings will be at 9:00 o'clock a.m. on April 30,
2    2010.
3         In the case of each of you, that hearing will be before
4    me.  By then we will be back in our regular courtroom on the
5    fourth floor.
6         Defendant Rosales, have you understood all the
7    explanations I've given you about the sentencing process?
8              DEFENDANT ROSALES:  Yes.
9              THE COURT:  Defendant Pulido, have you understood
10   all the explanations I've given you about the sentencing
11   process?
12             DEFENDANT PULIDO:  Yes, sir.
13             THE COURT:  Defendant Onken, have you understood
14   all the explanations I've given you about the sentencing
15   process?
16             DEFENDANT ONKEN:  Yes, sir.
17             THE COURT:  Okay.  I'm going to have Defendant
18   Pulido and Defendant Onken and their attorneys be seated and
19   I'll come back to you just a minute.
20        And I'll have Defendant Rosales and his attorneys come
21   back to the microphone.
22        Before I continue any further, Mr. Rosales, I'm going to
23   get some personal information about you.
24        What is your age and date of birth?
25             DEFENDANT ROSALES:  33 years old.  February 7,

1    1976.

2              THE COURT:  How far did you go in school?

3              DEFENDANT ROSALES:  Tenth grade.

4              THE COURT:  You went to school in Mexico?

5              DEFENDANT ROSALES:  In Mexico I went for six years.

6    And here in United States for English program for two years.

7              THE COURT:  What school did you attend here?

8              DEFENDANT ROSALES:  Arlington Heights High School.

9              THE COURT:  What experience have you had as far as

10   work is concerned?  What kind of work have you done?

11             DEFENDANT ROSALES:  Almost all my live I've been

12   self-employed as a carpenter.

13             THE COURT:  Okay.  What kind -- home building or

14   what sort of carpentry work?

15             DEFENDANT ROSALES:  Furniture for restaurants.

16             THE COURT:  Are you currently under the care of a

17   physician or psychiatrist for anything?

18             DEFENDANT ROSALES:  No.

19             THE COURT:  Have you been at any time in the last

20   six months?

21             DEFENDANT ROSALES:  No.

22             THE COURT:  Have you ever been hospitalized or

23   treated for narcotic addiction or alcoholism?

24             DEFENDANT ROSALES:  No.

25             THE COURT:  As far as you're concerned, do you

1  suffer from any kind of emotional or mental disability or

2  problem?

3          DEFENDANT ROSALES:  No.

4          THE COURT:  Are you now under the influence of

5  alcohol or any kind of drug?

6          DEFENDANT ROSALES:  No.

7          THE COURT:  Do you consider that you're of sound

8  mind?

9          DEFENDANT ROSALES:  Yes.

10         THE COURT:  You understand that you're here today

11 with the intent to plead guilty to the offense charged by

12 Count 8 of the original indictment, and that is the offense

13 of conspiracy to distribute a controlled substance, and that

14 you're also here with the intent to plead true to the

15 forfeiture allegations in the original indictment?

16     Do you understand that that's the reason you're here

17 today?

18         DEFENDANT ROSALES:  Yes.

19         THE COURT:  Do you have any reason to think,

20 Mr. Shaw, that your client is not fully competent to enter

21 those pleas?

22         MR. SHAW:  No reason to believe that, Your Honor.

23         THE COURT:  Do you have any reason to think that,

24 Mr. de Bullet, that your client is not fully competent to

25 enter those pleas?

1          MR. SHAW:  He appears to be competent to me, Judge.

2          THE COURT:  And do you have any reasonable,

3   Mr. de Bullet, that such a pleas would not be knowing and

4   voluntary?

5          MR. DE BULLET:  No, sir.

6          THE COURT:  Do you, Mr. Shaw, have any reasonable

7   to think they wouldn't be knowing and voluntary?

8          MR. SHAW:  I believe they would be knowing and

9   voluntary, Your Honor.

10         THE COURT:  Okay.  You have received a copy of the

11  original indictment in this case and you've read it and

12  understand exactly what you're charged with?

13         DEFENDANT ROSALES:  Yes.

14         THE COURT:  Do you understand that the counts that

15  you propose to plead guilty to your charge in that count is

16  conspiracy to distribute a controlled substance, and that the

17  count refers to the substance you conspired to distribute as

18  being methamphetamine, and that it involved more than 50

19  grams?

20      Do you understand that?

21         DEFENDANT ROSALES:  Yes.

22         THE COURT:  Unless there's a waiver of the

23  reading -- and of course the forfeiture allegations are --

24  describes the different properties that would be forfeited,

25  unless there is a waiver of the reading of the indictment,

1    I'm going to ask that the pertinent parts be read aloud at

2    this time.

3              MR. SHAW:   Judge, he -- excuse me.

4                    (Conferring.)

5              MR. SHAW:   Your Honor, we'll waive the reading of

6    the indictment.

7         I would like to point out on a forfeiture allegation to

8    which he intends to plead true, one of the matters, one of

9    the vehicles listed on there has been returned to him by the

10   government.  I don't know what the latest is but he does

11   waive his rights -- or he forfeits all that property except

12   that which has been returned to him.  And that was a pickup

13   truck.

14             THE COURT:  What is that he's talking about?

15             MR. BURGESS:  There was a vehicle that there wasn't

16   sufficient equity in out of its seizure is my understanding,

17   Your Honor, and it was returned to Defendant Rosales.  And

18   the United States will not be pursuing forfeiture.

19             THE COURT:  Which one is it, so I'll know?

20             MR. BURGESS:  Yes, Your Honor.

21        It's a 2008 white Nissan, Your Honor.

22             THE COURT:  White Nissan?

23             MR. BURGESS:  Yes, Your Honor.

24        And I don't actually believe that it's listed as one of

25   the items -- it's -- it's not listed in the plea agreement,

1    Your Honor.

2              THE COURT:  So I can forget everything he said

3    about the vehicle?

4              MR. BURGESS:  Yes, that's correct Your Honor.  It's

5    in the indictment, not in the plea agreement

6              THE COURT:  Okay.  Well, no, I can't forget

7    everything he said because I was asking about the indictment.

8         Is it in the indictment?

9              MR. BURGESS:  It is, Your Honor.

10             THE COURT:  It's a 2008 white Nissan?

11             MR. BURGESS:  Yes, Your Honor.

12             THE COURT:  Is it the only one in the indictment?

13             MR. BURGESS:  Yes -- it's the only white Nissan,

14   Your Honor.

15             THE COURT:  Okay.  I think we've got that cleared.

16        Your intent is to plead true to all the forfeiture

17   allegations in the indictment except as to the white Nissan,

18   2008 white Nissan.  Is that your understanding?

19             DEFENDANT ROSALES:  Yes.

20             THE COURT:  Okay.  Now, I have two documents that

21   have been handed up to me that appear to bear your signature.

22   I'm going to hold them up so you can see what I'm talking.

23        One's called a factual resume and the other is called a

24   plea agreement.

25        Do you see those documents?

1          Do you see what I'm holding up?

2               DEFENDANT ROSALES:  Yes.

3               THE COURT:  Did you sign each one of those

4      documents?

5               DEFENDANT ROSALES:  Yes.

6               THE COURT:  Did you read each one of those

7      documents before you signed it?

8               DEFENDANT ROSALES:  Yes.

9               THE COURT:  Did you understand exactly what each

10     one of those documents said before you signed it?

11              DEFENDANT ROSALES:  Yes.

12              THE COURT:  Were you able to read them?  Or did

13     somebody have to read them to you?

14              DEFENDANT ROSALES:  The gym assistant was the one

15     that told me about those papers.

16              THE COURT:  I'm sorry, what did you say?

17              DEFENDANT ROSALES:  The assistant, gym's assistant

18     was the one that read it to me.

19              MR. SHAW:  He's called Eugene, judge.

20              THE COURT:  He's referring to you?

21              MR. SHAW:  He's referring to my Spanish speaking

22     assistant.

23              THE COURT:  And your assistant reads the documents

24     to him in his language?

25              MR. SHAW:  In my presence.

1          THE COURT:  But it was in his language, in Spanish?

2          MR. SHAW:  Yes.

3          THE COURT:  Okay.

4      Did you understand exactly what each one of them said

5  before you signed it?

6          DEFENDANT ROSALES:  Yes.

7          THE COURT:  And did you discuss the legal meaning

8  of everything in those documents before you signed them with

9  -- with your attorney?

10          DEFENDANT ROSALES:  Yes.

11          THE COURT:  Which attorney -- which attorney did

12  you discuss them with?

13          DEFENDANT ROSALES:  Mr. Jim.

14          THE COURT:  Mr. de Bullet?

15          DEFENDANT ROSALES:  Yes.

16          THE COURT:  And did you understand the legal

17  significance of everything in those documents before you

18  signed it?

19          DEFENDANT ROSALES:  Yes.

20          THE COURT:  Well, then you understand the next

21  thing I'm going to go over with you then because it's in this

22  factual resume, but it's important enough that I'm going to

23  review it with you again.

24      If you were to persist in your plea of not guilty to the

25  offense charged by count 1 of the original -- count 8 of the

1    original indictment, before the government would cause you to

2    be convicted of that offense, the government would have to

3    prove to a jury beyond a reasonable doubt each of the things

4    I'm getting ready to go over.

5         First, that two or more persons directly or indirectly

6    reached an agreement to sell methamphetamine.

7         Second, that you knew of the unlawful purpose of that

8    agreement.

9         Third, that you joined in that agreement willfully, that

10   is, with the intent to further its unlawful purpose.

11        And, fourth, that the overall scope of that conspiracy

12   involved at least 50 grams or more of a mixture or substance

13   containing a detectable amount of methamphetamine.

14        Now, do you understand those are the things the

15   government would have to prove to a jury beyond a reasonable

16   doubt to cause you to be convicted of the offense charged by

17   count 8 of the original indictment if you were to persist in

18   your plea of not guilty to that count?

19        Do you understand that?

20             DEFENDANT ROSALES:  Yes.

21             THE COURT:  And do all those things the government

22   would have to prove, as I've just reviewed with you, do all

23   those facts exist in this case?

24             DEFENDANT ROSALES:  Yes.

25             THE COURT:  Okay.  Now, you have two attorneys with

you, Mr. de Bullet and Mr. Shaw.  You've had some controversy

with Mr. Shaw in the past and it hasn't been real clear to me

what it was about.  But as far as you're concerned, have

Mr. de Bullet and Mr. Shaw adequately and properly

represented you as your attorney?

            DEFENDANT ROSALES:  Yes.

            THE COURT:  Do you now have any complaint at all

with anything either of those lawyers has done in the

representation of you?

            DEFENDANT ROSALES:  No.

            THE COURT:  And I take it, Mr. de Bullet, that the

willingness of your client to plead guilty results from prior

discussions between you and Mr. Shaw and your client on the

one hand, and the attorney for the government, on the other?

            MR. DE BULLET:  All -- all that's correct, Your

Honor.  And you might throw in Mr. Burns.

            THE COURT:  He also participated?

            MR. DE BULLET:  (Nods head.)

            THE COURT:  Is that what you're saying?

            MR. DE BULLET:  That's correct.

            THE COURT:  And did all those discussions result in

this plea agreement that was mentioned a minute ago?

            MR. DE BULLET:  Actually, the plea agreement was

already in being and I approved it.

            THE COURT:  Okay.  Did you sign the plea agreement?

1          MR. DE BULLET:  I did, judge.

2          THE COURT:  I don't see your name on it.

3          MR. DE BULLET:  I signed it.

4     I may not have.  I signed the -- may I approach?

5     I signed the stipulation to it.

6     I'll sign this now.

7     May I approach, Your Honor?

8          THE COURT:  Yes.

9          MR. DE BULLET:  Thank you.

10          THE COURT:  I'm looking at page 8 of the plea

11    agreement.  And it has a signature of you, Mr. de Bullet.

12    And then below that it has somebody by the name of Jim

13    Renforth.

14     Did he sign your name to it?

15          MR. DE BULLET:  I would have to see it, Your Honor.

16     May I approach?

17          THE COURT:  Yes.

18     Did you sign it or did he sign it?

19          MR. DE BULLET:  This is my signature, Your Honor,

20    and he -- that is my signature.  And he also signed it as

21    well.  He had done a lot of the work with the client and I

22    assumed he just signed it for that purpose.  But that is my

23    signature and I did sign it.

24          THE COURT:  Is Mr. Renforth the one that

25    Mr. Rosales had some disagreement with?

1          MR. DE BULLET:  Yes, Your Honor.

2          THE COURT:  Okay.  Before I ask more questions

3    about the plea agreement I want to be sure I understand where

4    we are as far as Mr. Rosales' satisfaction with his attorney.

5          Mr. Rosales, you expressed a lot of dissatisfaction with

6    Mr. Shaw at earlier times.  What was the reason you were

7    dissatisfied with him at that time?

8          DEFENDANT ROSALES:  That he never put his attention

9    to me, and his assistant never took the time to explain to me

10   fully the things.

11         THE COURT:  Did they finally -- did Mr. Shaw

12   finally pay some attention to you and explain things the way

13   you wanted them explained?

14         DEFENDANT ROSALES:  Yes.

15         THE COURT:  And has Mr. de Bullet explained things

16   to you the way you wanted them explained?

17         DEFENDANT ROSALES:  Yes.

18         THE COURT:  Okay.  So whatever disagreement or

19   dissatisfaction you had with Mr. Shaw, that's not a problem

20   with you anymore?

21         DEFENDANT ROSALES:  It is not any problem anymore.

22         And I wanted to apologize to him and apologize to you

23   Your Honor.

24         THE COURT:  Okay.  I'm going to have the plea

25   agreement read aloud.  And then when he's through reading it,

1    Mr. Rosales, listen closely.  It will be interpreted for you

2    as he reads it.  I may ask you some questions as he goes

3    along.

4           MR. BURGESS:  Your Honor, there -- the plea

5    agreement for Mr. Rosales and Mr. Pulido are largely similar.

6    There are several differences.  I didn't know if you wanted

7    me to...

8           THE COURT:  If there are several differences I

9    would rather not try to do them at the same time.

10         Thank you for suggesting that though.

11         MR. BURGESS:  Yes, sir.

12         Javier Rosales, the defendant, the defendant's attorney,

13    and the United States of America, the government, agree as

14    follows.

15         Does the interpreter have a copy?

16         THE INTERPRETER:  No..

17    If you have a copy, I would appreciate it.

18         MR. BURGESS:  I think his attorney does.

19         MR. DE BULLET:  Here we go.

20         THE COURT:  Do you have one, Mr. Hernandez?

21         THE INTERPRETER:  Yes, Your Honor.

22         THE COURT:  Okay.  Go ahead.

23         MR. BURGESS:  Rosales understands that he has the

24    right to plead not guilty, to have a trial by jury, to have

25    his guilt proven beyond a reasonable doubt, to confront and

1    cross-examine witnesses and to call witnesses in his defense,

2    and against compelled self-incrimination.

3        Rosales waives these rights and pleads guilty to the

4    offense alleged in count 8 of the indictment charging

5    conspiracy to distribute a controlled substance in violation

6    of 21 U.S.C. Sections 846 and 841(b)(1)(B).

7        Rosales understands the nature and elements of crime to

8    which he is pleading guilty and agrees that the factual

9    resume he has signed is true and will be submitted as

10   evidence.

11       On count 8 of the indictment charging conspiracy to

12   distribute a controlled substance in violation of 21 U.S.C.

13   Sections 846 and 841(b)(1)(B) the court may impose the

14   following penalties:

15       Imprisonment for a period of not less than five years

16   nor more than 40 years.

17       A fine not to exceed two million dollars or both fine

18   and imprisonment.

19       A term of supervised release of not less than four

20   years.  If the defendant violates any condition of the term

21   of supervised release, the court may revoke such release term

22   and require the defendant to serve any or all of such term as

23   an additional period of confinement.  The effect of a

24   revocation of a term of supervised release is to make the

25   overall period of incarceration longer.  If the conditions of

1    supervised release are revoked on multiple counts the court

2    could order that the resulting terms of incarceration run

3    consecutive to one another.

4         A mandatory special assessment of $100.

5         Cost of incarceration and supervision.

6         And forfeiture of money or property.

7         THE COURT:  Let me stop you there a minute.

8         Mr. Rosales, you just heard him read out of the plea

9    agreement the penalties that a person convicted of the

10   offense charged by count 8 of the indictment can be subjected

11   to if convicted of that offense.

12        Do you realize that if you plead guilty to that offense,

13   you're subjecting yourself to these penalties:

14        A term of imprisonment that would have to be at least

15   five years and could be as much as 40 years.

16        Plus, payment of a fine of $2,000,000.

17        Plus, service of a tomb -- term of supervised release

18   that would be at least four years.  And that would start when

19   you get out of prison.  And that term of supervised -- term

20   of release could be much greater than four years.  As a

21   matter of fact, it could be for your entire life.

22        If you were -- and you would be required to pay a

23   special assessment of $100.  That would be payable at the

24   time of sentencing.

25        And, of course, if you plead true to the forfeiture

1  allegation, you'll be pleading -- you'll be subjecting all of

2  the property described in the original indictment except that

3  2008 white Nissan, you're -- you'll be subjecting your

4  interest in that property to the forfeiture.

5       Now, do you know you're subjecting yourself to all those

6  penalties and punishments if you plead guilty to count 8 of

7  the indictment, the original indictment?

8            DEFENDANT ROSALES:  Yes.

9            THE COURT:  Okay.  You can go on with the reading.

10           MR. BURGESS:  Rosales understand that the sentence

11  in this case will be imposed by the court after consideration

12  of the United States Sentencing Guidelines.  The guidelines

13  are not binding on the court but are advisory only.

14       Rosales has reviewed the guidelines with his attorney

15  but understands no one can predict with certainty the outcome

16  of the court's consideration of the guidelines in this case.

17       Rosales will not be allowed to withdraw his plea if his

18  sentence is higher than expected.

19       Rosales fully understands that the actual sentence

20  imposed, so long as it is within the statutory maximum, is

21  solely in the discretion of the court.

22       Rosales agrees to cooperate with the government by

23  giving truthful and complete information and/or testimony in

24  any proceedings regarding his knowledge of any violation of

25  any law of the United States occurring in the Northern

District of Texas and elsewhere.

Upon demand, Rosales shall submit a personal financial statement under oath and submit to interviews by the government and U.S. probation office regarding his capacity to satisfy any fines or restitution.

The government will advise the court of the extent of Rosales' cooperation.

The government will not bring any additional charges against Rosales based upon the conduct underlying and relating to Rosales' plea of guilty.

If Rosales has provided substantial assistance in the investigation or prosecution of others the government may file a motion urging sentencing consideration for that assistance.  Whether and to what extent to the grant the motion are matters solely within the court's discretion.

The government will dismiss after sentencing any remaining charges in this or any superseding indictment.

Rosales understands if he violates this agreement or if his guilty plea is vacated or withdrawn, the government will be free from any obligations of the agreement and free to prosecute Rosales for all offenses of which it has knowledge.

In such event, Rosales waives objections based upon delayed prosecution.

If the plea is vacated or withdrawn for any reason other than a finding it was involuntary, Rosales also waives

 1   objection to the use against him of any information or

 2   statements he has provided to the government and any

 3   resulting leads.

 4        Voluntary plea.

 5        This plea of guilty is freely and voluntarily made and

 6   is not the result of force or threats or of promises apart

 7   from those set forth in this plea agreement.  There have been

 8   no guarantees or promises from anyone as to what sentence the

 9   court will impose.

10        The defendant agrees to forfeit all right, title, and

11   interest in the following property of the United States of

12   America:

13        The real property at 6209 Roberts Lane, Cleburne,

14   Johnson County, Texas.  Described as being 4.811 acre more or

15   less --

16             THE COURT:  I don't think we need to read all that.

17             MR. BURGESS:  Yes, Your Honor.

18             THE COURT:  Now, you understand exactly what

19   property is listed in your plea agreement?

20             DEFENDANT ROSALES:  Yes.

21             THE COURT:  I don't think you need to read that.

22        Let's pick up after the description of property which

23   would start at the top of page 5.

24             MR. BURGESS:  Thank you, Your Honor.

25        Defendant agrees to above-described property was used or

1    intended to be used to commit or facilitate the commission of

2    the offense in count 8.

3        Defendant agrees to the forfeiture of the

4    above-described property to the United States of America as a

5    result of his conviction for the offense and pursuant to 21

6    U.S.C. Section 853(a).

7        Defendant consents to the entry of orders for forfeiture

8    for the above-described property and waives any requirement

9    of Rule 732.2 and/or 43A of the federal rules of criminal

10    procedure regarding the forfeiture proceedings including

11    notice of the forfeiture allegation.

12        Defendant acknowledges and understands that the

13    forfeiture of the above-described property as part of the

14    steps which may be imposed in this case and waives any

15    requirement the court advise him of the same under rule

16    11(b)(1)(j) of the federal rules of criminal procedure.

17        Defendant agrees to provide truthful information and

18    evidence necessary for the government to affect a forfeiture

19    of the above-described property.

20        The defendant waives all challenges, constitutional,

21    statutory, habeas, et cetera to the forfeiture of the

22    above-described property and agrees to hold the government,

23    its officers, agents, and employees harmless from any claims

24    whatsoever in connection with the seizure, forfeiture,

25    storage, or disposal of the above-described property.

1    Defendant also agrees the above-described property was

2    merchandise attempted to be exported from the United States

3    in violation of the law as alleged in count 1.

4    I'm sorry, Your Honor, that's a reference to count 1

5    that defendant is not pleading to.  That should be count 8,

6    if I can correct that?

7    THE COURT:  I'll hand back the plea agreement so

8    you can make whatever correction you need to make.

9    MR. DE BULLET:  All right, Your Honor.

10   MR. BURGESS:  Thank you, Your Honor.

11   THE COURT:  Be sure the defendant understands what

12   you're doing and agrees to it.

13   DEFENDANT ROSALES:  I do, Your Honor.

14   MR. BURGESS:  May I approach, Your Honor?

15   THE COURT:  Yes.

16   MR. BURGESS:  Thank you.

17   THE COURT:  Mr. Rosales, on page 5 of your plea

18   agreement, the third line from the bottom, the word "one,"

19   o-n-e has been changed to the word "eight."  Apparently,

20   there was a typographical or clerical error and they put the

21   "one" in there instead of "eight."  And it's been changed to

22   show it's count 8 that you're pleading to.

23   Was that change made with your approval?

24   DEFENDANT ROSALES:  Yes.

25   THE COURT:  And did you initial it to show that you

```
1   approved of the change?

2              DEFENDANT ROSALES:  Yes.

3              THE COURT:  Okay.

4       Go ahead and start reading that paragraph over again,

5   the paragraph --

6              MR. BURGESS:  Your Honor, I'm sorry, I actually

7   jumped the gun.  There's a sentence -- there's another

8   reference in that last sentence to paragraph 2 count 1 as

9   well.

10      If I can fix that?

11             THE COURT:  Well, let's look and see if it's

12  anyplace else that we need to change while we're changing it.

13             MR. BURGESS:  I believe that's the last time, Your

14  Honor.

15             THE COURT:  Okay.  Let me hand it back again.

16             MR. BURGESS:  I apologize.

17      May I approach, Your Honor?

18             THE COURT:  Yes.

19      Hold on a minute.

20      Yes, before you start reading again, let me double-check

21  something.

22      Well, let me ask:  Mr. Rosales, in the very last line on

23  page 2 of the plea agreement the word "one" has been changed

24  to the word "eight" for the same reason it was changed two or

25  three lines above that.
```

1          Was that done with your approval?

2               DEFENDANT ROSALES:  Yes.

3               THE COURT:  And did you initial it to indicate you

4     did approve of it?

5               DEFENDANT ROSALES:  Yes.

6               THE COURT:  Okay.  Hold on a minute before you

7     start reading again.

8                           (Brief pause.)

9               MR. BURGESS:  Judge, may I be heard?

10         I think I see where the court is concerned.  And I think

11    the entire paragraph needs to be stricken.  I think this

12    language is in reference to count 1.

13              THE COURT:  I was trying to figure out what it's

14    all about.

15              MR. BURGESS:  I think that's what it's about, Your

16    Honor, it's about the exportation.

17         So on a motion by the government I just moved to strike

18    that paragraph.

19              THE COURT:  Well, I'm going to hand it back again

20    and y'all try to get it the way it ought to be.

21              MR. BURGESS:  Yes, Your Honor.

22                          (Pause.)

23              MR. BURGESS:  May I approach, Your Honor?

24              THE COURT:  Yes.

25         Okay.  Mr. Rosales, now the entire five lines at the

1    bottom of page 5 of the plea agreement and the two lines at

2    the top of page 6 have been marked through.  And it looks

3    like you initialed that to indicate you approved of those

4    being marked through.  So that's -- that whole paragraph has

5    been taken out of the plea agreement.

6         Do you understand that?

7              DEFENDANT ROSALES:  Yes.

8              THE COURT:  And has that been done with your

9    approval?

10             DEFENDANT ROSALES:  Yes.

11             THE COURT:  And you initialed it to indicate that

12   you did approve of that?

13             DEFENDANT ROSALES:  Yes.

14             THE COURT:  Okay.  Go ahead.

15             MR. BURGESS:  Further, the defendant agrees not to

16   make any claim or assert, rescind, contest, challenge, or

17   appeal in any way the administrative or judicial, civil or

18   criminal, forfeiture to the United States of America of any

19   property, real or personal, alleged as subject of forfeiture

20   in the indictment or seized or restrained by law enforcement

21   agents during the investigation related to the indictment.

22        He agrees this property is subject to forfeiture

23   pursuant to 19 U.S.C. Section 1595(a)(B), 21 U.S.C. Section

24   881(a), 21 U.S.C. Section 853(a), and/or 18 U.S.C. Section

25   924(d) whichever is applicable.

 1          Rosales has thoroughly reviewed all the legal and

 2    factual aspects of this case with his lawyer and is fully

 3    satisfied that the law-- with the lawyer's legal

 4    representation.

 5          Rosales has received from his lawyer explanation

 6    satisfactory to him concerning each paragraph of this plea

 7    agreement, each of his rights effected by this agreement, and

 8    the alternatives available to him other than entering into

 9    this agreement.

10          Because he concedes that he is guilty and after

11    conferring with his lawyer, Rosales has concluded that it is

12    in his best interest to enter into this plea agreement and

13    all its terms rather than to proceed to trial in this case.

14          This agreement is limited to the United States

15    Attorney's Office for the Northern District of Texas and does

16    not bind any other federal, state, or local prosecuting

17    authorities, nor does it prohibit any civil or administrative

18    proceedings against Rosales or any property.

19          This document is a complete statement of the parties'

20    agreement and may not be modified unless the modification is

21    in writing signed by all parties.

22               THE COURT:  Excuse me.  You don't need to give the

23    date of it.

24          Mr. Rosales, you just heard the plea agreement read.

25          Are those all of the terms of your plea agreement with

1    the government?

2              DEFENDANT ROSALES:  Yes.

3              THE COURT:  Did you voluntarily and of your own

4    free will enter into that plea agreement?

5              DEFENDANT ROSALES:  Yes.

6              THE COURT:  Other than that plea agreement, do you

7    have any deal or understanding or agreement of any kind with

8    the government?

9              DEFENDANT ROSALES:  No.

10              THE COURT:  I take it he doesn't have a cooperation

11    agreement?

12              MR. BURGESS:  He does not, Your Honor.

13              THE COURT:  Okay.

14        Other than --

15              MR. BURGESS:  I'm sorry.  I didn't -- he does, Your

16    Honor, and it's been provided to the court.

17              THE COURT:  Okay.

18              MR. BURGESS:  I apologize.

19              THE COURT:  Okay.  Let me go back and ask about

20    something else.

21        I have now in front of me a document called a

22    cooperation agreement that's marked Government's Exhibit 1.

23    I'm going to hold it up so you can see what I'm talking

24    about.

25        Do you see that agreement?

1          DEFENDANT ROSALES:  Yes.

2          THE COURT:  And did you sign that agreement?

3          DEFENDANT ROSALES:  Yes.

4          THE COURT:  And did you understand exactly what it

5     provided before you signed it?

6          DEFENDANT ROSALES:  Yes.

7          THE COURT:  Okay.  Other than that plea agreement

8     that was read a minute ago and this cooperation agreement, do

9     you have any deal or understanding or agreement of any kind

10    with the government?

11         DEFENDANT ROSALES:  No.

12         THE COURT:  Other than the plea agreement that was

13    just read, has anyone made any promise or assurance to you of

14    any kind in an effort to induce you to enter a plea of guilty

15    in this case?

16         DEFENDANT ROSALES:  No.

17         THE COURT:  By the way, I'm going to have this

18    cooperation agreement, Government's Exhibit 1, made a part of

19    the record of this hearing.

20         Has anyone mentally, physically, or in any other way

21    attempted in any way to force you to plead guilty in this

22    case?

23         DEFENDANT ROSALES:  No.

24         THE COURT:  Do you understand that if you plead

25    guilty and if that plea is accepted by the court, you will be

1    adjudged guilty of the offense charged by count 8 of the
2    original indictment of this case and your punishment will be
3    assessed somewhere within the range of punishment provided by
4    statute and your sentence will be within the range provided
5    by statute?
6        Do you understand that?
7            DEFENDANT ROSALES:   Yes.
8            THE COURT:   And do you understand if you plead true
9    to the forfeiture allegations in the original indictment your
10   interest in all of the property described in those forfeiture
11   allegations except the 2008 white Nissan will be forfeited?
12       Do you understand that?  If you plead true to those
13   allegations.
14           DEFENDANT ROSALES:   Yes.
15           THE COURT:   Now, do you understand that if you
16   plead guilty and then end up getting a sentence that's a
17   whole lot bigger than you hoped it would be, you'll still be
18   bound by your plea of guilty and you won't have a right to
19   withdraw it?
20           DEFENDANT ROSALES:   Yes.
21           THE COURT:   With the knowledge you now have, how do
22   you plead to the offense charged by count 8 of the original
23   indictment, guilty or not guilty?
24           DEFENDANT ROSALES:   Guilty.
25           THE COURT:   How do you plead to the forfeiture

```
 1   allegations in the original indictment except as to the 2008

 2   white Nissan, true or not true?

 3             DEFENDANT ROSALES:  True.

 4             THE COURT:  Are those pleas consistent with your

 5   advice to the defendant, Mr. Shaw?

 6             MR. SHAW:  Yes, they are, Your Honor.

 7             THE COURT:  Are they consistent with your advice to

 8   the defendant, Mr. de Bullet?

 9             MR. DE BULLET:  As well, Your Honor.

10             THE COURT:  Okay.  I'll accept those pleas on the

11   condition there's a factual basis to support it.  And I'll

12   ask that the stipulated facts in the factual resume be read

13   aloud.

14             MR. BURGESS:  On or about October 21st, 2009, task

15   forces officers with the D.E.A. went to the home of Edgar

16   Ramirez based upon information that he was in possession of

17   methamphetamine.  Edgar Ramirez agreed to let officers search

18   his house and lead them to approximately two kilograms of

19   methamphetamine.  Edgar Ramirez had received the

20   methamphetamine from the defendant.  The defendant asked

21   Edgar Ramirez to sell the methamphetamine that he had

22   received through Alberto Pulido, also known as the Tea Kettle

23   in Mexico.  The defendant has entered into the agreement with

24   Edgar Ramirez and Alberto Pulido knowing the unlawful purpose

25   of the agreement.  The defendant admits the items were tested
```

1    and are in fact methamphetamine.

2            THE COURT:  You've heard the stipulated facts read.

3        Are all those facts true and correct?

4            DEFENDANT ROSALES:  Yes.

5            THE COURT:  Are they consistent with your

6    understanding of the true facts, Mr. Shaw?

7            MR. SHAW:  Yes, they are, Your Honor.

8            THE COURT:  Are they consistent with the true

9    facts, Mr. de Bullet?

10           MR. DE BULLET:  Yes, judge.

11           THE COURT:  Okay.  I'll order that the factual

12   resume be filed along with this -- this plea agreement.

13       The court orders that in the case of United States of

14   America versus Javier Gonzalez (sic) that the defendant is

15   fully competent and capable of entering an inform plea and

16   that his plea of guilty to the offense charged by count 8 of

17   the original indictment and his plea of true to the

18   forfeiture allegations with the exception we indicated are

19   knowing and voluntary pleas supported by independent bases in

20   fact -- in fact containing each of the essential elements of

21   the offense charged by count 8 of the original indictment and

22   essential to the forfeiture of the property described in the

23   forfeiture allegation and that such pleas did not result from

24   force, threats, or promises other than those set forth in the

25   plea agreement.

1        The defendant's plea of guilty and plea of true are

2    therefore accepted and he is now adjudged guilty of the

3    offense charged by count 8 of the original indictment.  And

4    his interest in the property described in the forfeiture

5    allegation other than that white Nissan 2008 truck are hereby

6    subject to forfeiture.

7        Okay.  The defendant is remanded to custody.

8        And the attorneys are excused.

9            MR. SHAW:  Thank you, judge.

10           MR. DE BULLET:  Thank you, Your Honor.

11                    (End of proceeding.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4       I, RANDY M. WILSON, C.S.R., certify that at the time of

5    electronic filing the foregoing is a true and correct

6    transcript, to the best of my abilities of the pages of the

7    stenographic notes provided to me by the court of the

8    proceedings in the foregoing entitled matter.

9

10      I certify that I am neither counsel for, related to, nor

11   employed by any of the parties to the action in which this

12   hearing was taken and further I am not financially nor

13   otherwise interested in the outcome of the action.

14

15      I further certify that the transcript fees format comply

16   with those prescribed by the Court and the Judicial

17   Conference of the United States.

18

19       This the 30th day of November, 2010.

20

21                          s/RANDY M. WILSON
                          _____
22
                          RANDY M. WILSON, C.S.R.
23                        Official Court Reporter
                          The Northern District of Texas
24                             Dallas Division

25